UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANA BECERRA,<br><br>    Plaintiff,<br><br>v.<br><br>DR PEPPER/SEVEN UP, INC.,<br><br>    Defendant. | Case No. 17-cv-05921-WHO<br><br>**ORDER DENYING MOTION TO TRANSFER AND GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 30, 35 |

## INTRODUCTION

Plaintiff Shana Becerra alleges that she is a consumer of the soft drink product Diet Dr Pepper. She believed that Diet Dr Pepper would assist in weight loss or healthy weight management due to the use of the term "diet" in the name of the product and on its label, but has since learned that studies and articles suggest that artificial sweeteners, including those used in Diet Dr Pepper, may instead cause weight gain. She brings this putative class action on behalf of herself and a California class of similarly-situated consumers for damages and equitable relief, including an injunction to stop defendant Dr Pepper/Seven Up, Inc. ("Dr Pepper") from marketing its Diet Dr Pepper product as "diet." While Dr Pepper moves to transfer this action to the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a), the case belongs here--it has a California plaintiff who was injured in California and chose this venue. Dr Pepper also moves to dismiss plaintiff's Second Amended Complaint ("SAC") in its entirety, and I agree with its contention that it is not plausible that a reasonable consumer would believe that drinking Diet Dr Pepper would assist in weight loss, beyond the fact that it has no calories. Accordingly, I DENY Dr Pepper's motion to transfer venue but GRANT its motion to dismiss with leave to amend

.

**BACKGROUND**

Dr Pepper is a Delaware corporation with its principal place of business in Plano, Texas. SAC ¶ 7. It first introduced Diet Dr Pepper, a soft drink product, in 1962. SAC ¶ 11. It "uses the term 'diet' to market Diet Dr[] Pepper because the product is sweetened with a non-caloric artificial sweetener, aspartame, rather than sugar." *Id.* ¶ 14. Plaintiff alleges that "[a]lthough aspartame does not contain calories, scientific research demonstrates that it, like other nonnutritive sweeteners, is likely to cause weight gain." *Id.* ¶ 17. She cites a number of studies and articles discussing aspartame's effects on the body and their findings in her SAC.

Plaintiff is a resident of Santa Rosa, California who has struggled with obesity since childhood. She has been a regular purchaser of Diet Dr Pepper for over thirteen years. SAC ¶¶ 46–47. She purchased the product believing that its prominent use of the term "diet" on its label and in its advertising indicated "that it would contribute to healthy weight management, and, due to its lack of calories, would not cause her to gain weight." *Id.* ¶ 47. She alleges that she would not have purchased the product at the price she paid, or perhaps at all, had defendant not marketed the product as "diet." *Id.* ¶ 48.

Plaintiff brings suit on behalf of herself and a California class alleging false and misleading advertising, in violation of California's False Advertising Law ("FAL"), Consumers Legal Remedies Act ("CLRA"), and Unfair Competition Law ("UCL"), as well as breach of both express and implied warranty.[1] Defendant moves to transfer venue to its home state of Texas and to dismiss the action in its entirety.

**LEGAL STANDARD**

**I.     Motion to Transfer**

Granting a transfer of venue pursuant to 28 U.S.C. § 1404(a) requires two findings. First, the district court must determine that the transferee court is one "where the action might have been brought." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (internal quotation marks

---

[1] On the same day this action was initiated, two New York consumers—also represented by plaintiff's counsel—filed a similar suit against Dr Pepper in New York on behalf of that state's consumers. *See Excevarria v. Dr Pepper Snapple Group, Inc.*, No. 1:17-cv-7957 (S.D.N.Y. filed on Oct. 16, 2017).

2

omitted). Second, as part of completing an "individualized, case-by-case consideration of convenience and fairness," *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000), the district court must find "that the convenience of parties and witnesses in the interest of justice favor[s] transfer." *Hatch*, 758 F.2d at 414 (internal quotation marks omitted). Importantly, the Ninth Circuit has held that a "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

As part of its convenience analysis, the court must weigh a variety of "private and public interest factors affecting the convenience of the forum." *Decker Coal*, 805 F.2d at 843. Courts in this district consider the following factors: (i) plaintiff's choice of forum; (ii) convenience of the parties; (iii) convenience of the witnesses; (iv) ease of access to the evidence; (v) familiarity of each forum with the applicable law; (vi) feasibility of consolidation with other claims; (vii) any local interest in the controversy; and (vii) the relative court congestion and time to trial in each forum. *See, e.g.*, *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014); *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011); *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009).

**II.    Motion to Dismiss**

Under Federal Rule of Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

3

plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* The allegations of fraud "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.      Motion to Transfer**

Neither party disputes that this case is properly brought here but could also have been brought in the Eastern District of Texas, as defendant is headquartered there. The question is whether the relevant convenience and fairness factors weigh in favor of transfer or retention. While the strong presumption in favor of plaintiff's choice of forum is somewhat dampened due to the class allegations, *see Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987), I nonetheless find that plaintiff's choice is entitled to some deference, especially given the significant local interest in

the controversy. She, as well as each member of the proposed class, is either a resident of this district or a district within California. Moreover, her alleged injuries are the result of purchasing and consuming Diet Dr Pepper within this state's boundaries, and this action is based on California consumers relying on California-specific marketing and sale efforts.

Defendant's strongest argument in favor of transfer is that it will serve judicial economy, as defendant has also moved to transfer the New York-based *Excevarria v. Dr Pepper Snapple Group, Inc.,* No. 1:17-CV-07957 (S.D.N.Y. 2017) action to the Eastern District of Texas. That has not happened yet. Given that any such transfer is speculative at this stage, and considering the local interest in the controversy and deference to plaintiff's choice of forum, defendant has failed to make the strong showing of inconvenience necessary to grant transfer. I DENY defendant's motion to transfer.

**II.     Motion to Dismiss**

   **A.  Express Preemption by the NLEA**

Dr Pepper moves to dismiss plaintiff's claims on the grounds that they are expressly preempted by Congress and the FDA's approval of the use of "diet" as part of a soft drink brand name, like "Diet Dr Pepper," in the Nutrition Labeling and Education Act of 1990 ("NLEA"). The Supremacy Clause of Article VI of the Constitution empowers Congress to make laws that preempt state laws. U.S. Const. Art. VI, cl. 2; *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S.Ct. 1378, 1383 (2015). Congress may exert this power through express preemption or conflict preemption—here, defendant argues only that express preemption applies.

"In analyzing express preemption, we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 757 (9th Cir. 2015) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). This assumption applies not only "to the question whether Congress intended any pre-emption at all," but also "to questions concerning the *scope* of its intended invalidation of state law . . . ." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (emphasis in original). "Where there is an express preemption clause applicable to a provision of the FDCA, the Court must determine whether the state law at

issue falls within the scope of that preemption." *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 798 (N.D. Cal. 2015) (citing *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)). Courts "have a duty to accept the reading that disfavors pre-emption" when such a reading is plausible. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005).

"The purpose of Congress is the ultimate touchstone in every pre-emption case." *Medtronic*, 518 U.S. at 485 (internal quotation marks and citations omitted). Congress's intent "primarily is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it." *Id.* at 486. "Also relevant, however, is the structure and purpose of the statue as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* (internal citations omitted).

Turning to the relevant statute, the NLEA amended the Food, Drug, & Cosmetic Act ("FDCA") to "establish[] uniform food labeling requirements, including the familiar and ubiquitous Nutrition Facts Panel found on most food packages," *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014), as well as "'to establish the circumstances under which claims may be made about nutrients in foods.'" *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1116 (N.D. Cal. 2010) (quoting H.R. Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337). The many subsections of 21 U.S.C. § 343 establish the conditions under which food is considered "misbranded," including "[i]f its labeling is false or misleading . . . ." 21 U.S.C. §343(a). Section 343(r) imposes specific labeling requirements governing "nutrition levels and health-related claims" made on product labels. Section 343(r)(2)(D), however, exempts from certain requirements a claim

> which uses the term 'diet' and is contained in the label or labeling of a soft drink if (i) such claim is contained in the brand name of such soft drink, (ii) such brand name was in use on such soft drink before October 25, 1989, and (iii) the use of the term 'diet' was in conformity with section 105.66 of title 21 of the Code of Federal Regulations.

21 U.S.C. § 343(r)(2)(D). "Such a claim is subject to paragraph (a)," *id.*, which provides that a food shall be deemed misbranded "[i]f its labeling is false or misleading . . . ." 21 U.S.C. § 343(a).

Section 343-1 of the NLEA expressly prohibits a state or local government from establishing "any requirement respecting any claim . . . made in the label or labeling of food that is not identical to the requirement of section 343(r) . . . ." 21 U.S.C. § 343-1(a)(5). "The phrase 'not identical to' means 'that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] . . . [a]re not imposed or contained in the applicable [federal regulation] . . . or [d]iffer from those specifically imposed or contained in the applicable [federal regulation].'" *Lilly*, 743 F.3d at 665 (quoting 21 C.F.R. § 100.1(c)(4))).

Placed in the context of the statutory framework and the plain language of the statute, defendant's express preemption argument fails. The NLEA does not affirmatively approve of the use of "diet" in soft drink brand names like "Diet Dr Pepper," but instead exempts it from certain labeling requirements to which other nutrition level and health-related claims are subjected. *See* 21 U.S.C. § 343(r)(2)(D).[2] Section 343-1 preempts state laws that are "not identical to the requirement of section 343(r)," but Diet Dr Pepper is not subject to Section 343(r); it is specifically exempt from Section 343-1 and is instead subject to Section 343(a). Section 343-1 does *not* address Section 343(a). Even if it did, the state laws under which plaintiff brings suit—California's UCL, FAL, CLRA, and Sherman Law—impose identical requirements to Section 343(a) in that they also prohibit false and misleading advertising. *See, e.g.*, *Larsen v. Trader Joe's Co.*, 917 F. Supp. 2d 1019, 1023 (N.D. Cal. 2013) ("[W]hile federal law does prohibit state food labeling requirements that are not identical to federal requirements, the FDCA and California law contain *identical* prohibitions on false or misleading labeling."); *Becerra v. Coca-Cola Co.*, No. C

---

[2] Nor have the corresponding FDA regulations that defendant cites affirmatively approved the use of "diet" in soft drinks such as "Diet Dr Pepper." *See* Mot. at 12–13. The only regulation that expressly addresses the use of the term "diet" is 21 C.F.R. § 101.13(q)(2), which provides: "A soft drink that used the term *diet* as part of its brand name before October 25, 1989, and whose use of that term was in compliance with 105.66 of this chapter as that regulation appeared in the Code of Federal Regulations on that date, may continue to use that term as part of its brand name, provided that its use of the term is not false or misleading . . . ." As discussed, however, California law contains an identical prohibition of "false or misleading" advertising. The remaining FDA regulations on calorie-free products (21 C.F.R. § 101.60(b)), sugar-free products (21 C.F.R § 101.60(c)), and products containing aspartame (21 C.F.R. § 172.804) do not address the use of the term "diet" in conjunction with these types of products, which is the particular term giving rise to plaintiff's claims.

17-05916 WHA, 2018 WL 1070823, at *2 (N.D. Cal. Feb. 27, 2018)[3]; *accord Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (finding no express preemption of California's Sherman Law by similar section of NLEA prohibiting "false or misleading" branding of cosmetics because federal and state duties were identical). Given that California law is entirely consistent with and indeed identical to the NLEA, there is no preemption of plaintiff's claims.

### B. California's Safe Harbor Doctrine

Dr Pepper also moves to dismiss plaintiff's FAL, CLRA, and UCL claims on the grounds that they are barred by California's safe harbor doctrine. "In California, unfair competition claims are subject to the safe harbor doctrine, which precludes plaintiff[] from bringing claims based on 'actions the Legislature permits.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999)). "To fall within the safe harbor, the challenged conduct must be affirmatively permitted by statute—the doctrine does not immunize from liability conduct that is merely not unlawful." *Id.* This includes not only California statutes, but also federal statutes and regulations. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1164 (9th Cir. 2012).

California's safe harbor doctrine does not apply because no statute or regulation "affirmatively permit[s]" the use of the term "diet" in soft drink labels, as discussed above. *See Becerra v. Coca-Cola Co.*, 2018 WL 1070823, at *3. Instead, the NLEA makes it "merely not unlawful" to use the term "diet" if certain conditions are met; compliance with a federal statute or regulation does not establish express authorization. California's safe harbor doctrine does not bar plaintiff's claims.

---

[3] Defendant filed a Notice of Supplemental Authority in support of its Motion to Dismiss. *See* Dkt. No. 46. The local rules permit a party to submit such a statement of recent decision, but explicitly specify that such a statement should "contain[] a citation to and provid[e] a copy of the new opinion—*without argument*." Civil L-R 7-3(d)(2) (emphasis added). I agree with plaintiff that defendant's notice clearly violates this rule, as it not only summarizes the favorable portions of the opinion only but also proceeds to apply the opinion's reasoning to this case. The solution, however, is not to grant plaintiff's motion for leave to file an additional response, *see* Dkt. No. 47, and welcome even further argument, including a reply from defendants, *see* Dkt. No. 48. In the spirit of the rule, which indicates that there shall be no argument at all, I strike defendant's argument as contained in both the notice and reply, and I deny plaintiff's motion for leave to file a response. I consider the complete opinion issued in the *Becerra v. Coca-Cola Co.* case, but not the parties' argument, in this decision.

## C. Plaintiff's Unfair Competition Claims

Dr Pepper finally moves to dismiss plaintiff's claims on the basis that her deception argument is implausible because no reasonable consumer would be misled by the term "diet" in the context of a diet soft drink, nor do the studies and articles referenced in the Complaint establish that Diet Dr Pepper actually causes weight gain. In opposition, plaintiff argues that she plausibly alleges that consumers understand "diet" to mean "useful in regulating healthy body weight," Opp. at 19, and that it is not her burden at the pleadings stage to prove causation.

Plaintiff's FAL, CLRA, and UCL claims are governed by the "reasonable consumer" test, which requires that plaintiff "show that members of the public are likely to be deceived." *Ebner*, 838 F.3d at 965 (9th Cir. 2016) (internal quotation marks and citations omitted). "This requires more than a mere possibility that [the] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.*

While the Ninth Circuit has explained that "California courts[] have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer," "[d]ecisions granting motions to dismiss claims under the Unfair Competition Law have occasionally been upheld." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008). In *Ebner*, for example, a plaintiff brought suit under the unfair competition laws against a cosmetics company alleging that its lip product was deceptive because the net weight accurately indicated the included product, but the tube design's screw mechanism only allowed 75% of the product to advance up the tube, leaving the remaining 25% inaccessible. 838 F.3d at 961–62. The Ninth Circuit affirmed the district court's dismissal because it was implausible that a rational consumer would make the assumption that there was no further product in the tube once using up the initial 75% when the remainder was plainly visible. *Id.* at 966. "And even if some consumers might hazard such an assumption, the [product] [wa]s not false and deceptive merely because the remaining product quantity m[ight have been] unreasonably

9

misunderstood by an insignificant and unrepresentative segment of the class of persons that may purchase the product." *Id.* (internal quotation marks, alterations, and citation omitted).

In a recent memorandum disposition, the Ninth Circuit also affirmed the district court's dismissal of a similar suit against Starbucks, the coffee company, alleging that its labeling of the volume of iced beverages was deceiving because they did not actually contain the stated volume of liquid, but rather contained some lesser amount of liquid, plus ice. *See Forouzesh v. Starbucks Corp.*, No. 16-56366, slip op. at 2 (9th Cir. Mar. 12, 2018). The panel reasoned that "[t]he statutory claims fail as a matter of law because no reasonable consumer would think (for example) that a 12-ounce 'iced' drink, such as iced coffee or iced tea, contains 12 ounces of coffee or tea and no ice." *Id.*

And in a very similar case to this one alleged against the Coca-Cola Company by the same plaintiff here, Judge William Alsup dismissed plaintiff's case, reasoning that "a reasonable consumer would simply not look at the brand name Diet Coke and assume that consuming it, absent any lifestyle change, would lead to weight loss." *Becerra v. Coca-Cola Co.*, 2018 WL 1070823, at *3. Judge Alsup added that "Becerra further fails to allege facts showing how a reasonable consumer would infer from the example Diet Coke advertisements that consumption would lead to weight loss." *Id.* at *4.

As in the *Coca-Cola* action, plaintiff theorizes that the term "diet" leads "consumers [to] reasonably believe that [defendant's] product will assist in weight loss, or at least healthy weight management, for example, by not causing weight gain." SAC ¶ 15. Plaintiff's argument does not pass muster. Nothing on the label, packaging, or advertising of Diet Dr Pepper makes the claim or even suggests that the product will assist in weight loss or healthy weight management. It is not marketed as a health food product, and plaintiff does not allege otherwise.

Plaintiff alleges only that defendant "tout[s] Diet Dr Pepper as 'diet,' and containing zero calories." *Id.* ¶ 39. But Diet Dr Pepper is a "diet" product *relative to* regular Dr Pepper, because Diet Dr Pepper contains zero calories. A reasonable consumer knows that this is and always has been true of soft drinks generally—"diet" soft drinks are simply lower calorie or calorie-free versions of their sugar-laden counterparts. A reasonable consumer would have no basis to infer

10

anything more from Diet Dr Pepper's label or advertising than that it is a calorie-free soft drink. Nor does plaintiff provide any evidence that a reasonable consumer understands "diet" in the context of soft drinks to mean otherwise. As in the *Starbucks* and *Coca-Cola* cases, that a small number of persons might unreasonably misunderstand the label does not render the product's label deceptive within the meaning of California's unfair competition laws. Plaintiff's theory of deception fails to pass the "reasonable consumer" test. Accordingly, her unfair competition claims must be dismissed.

In the interest of thoroughness should plaintiff seek to amend, I address Dr Pepper's second argument regarding the studies and articles cited in the SAC. It asserts that the studies and articles referenced fail to support plaintiff's premise that aspartame actually causes weight gain. While plaintiff is correct that she need not scientifically prove causation at the pleading stage, she must nonetheless *plausibly* allege it. The problem with the studies she cites is not that they provide conflicting conclusions or create some factual dispute, as was the case in *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017), which plaintiff relies on. Instead, the studies do not allege causation at all—at best, they support merely a correlation or relationship between artificial sweeteners and weight gain, or risk of weight gain. *See, e.g.*, SAC ¶¶ 19 ("'[D]ata ... support the existence of an *association* between artificially-sweetened beverage consumption and weight gain . . . .'") (emphasis added); ¶ 21 ("'[F]requent consumers of these sugar substitutes may also be at increased *risk* of excessive weight gain . . . .'") (emphasis added); ¶ 27 ("[A]rtificial sweeteners did not lead to any significant weight loss . . . ."). But correlation is not causation, neither for purposes of science nor the law.

If plaintiff provided credible studies that support that Diet Dr Pepper or aspartame *causes* weight gain, that showing would be sufficient to establish the plausibility of plaintiff's theory even if Dr Pepper replied with many more that disclaimed it. But plaintiff's SAC fails to cite even a single study that concludes that there is a causative link between aspartame and weight gain. This is a separate and independent reason to grant defendant's motion to dismiss.

### D. Breach of Warranty Claims

Finally, Dr Pepper moves to dismiss plaintiff's claims for breach of express and implied

11

warranty on the grounds that plaintiff fails to allege that Diet Dr Pepper is unfit for consumption or otherwise breaches a promise made by the label. As I have already concluded that plaintiff's theory that the term "diet" indicates usefulness with weight loss is implausible, plaintiff's express warranty claim, which rests on the same theory, must also fail. The term "diet" as it appears on Diet Dr Pepper's label does not create an express warranty to consumers that the product will assist with weight loss. Because plaintiff acknowledges in opposition that "her implied warranty claims are coextensive with her express warranty claims," Opp. at 21, her implied warranty claim also fails. Plaintiff's express and implied warranty claims are DISMISSED.

## CONCLUSION

For the foregoing reasons, the Motion to Transfer is DENIED and the Motion to Dismiss the Second Amended Complaint is GRANTED with leave to amend. Plaintiff may file an amended complaint within 20 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: March 30, 2018

William H. Orrick
United States District Judge